# EXHIBIT
# 3

SALAM INTERNATIONAL INVESTMENT LIMITED

SOULA SYSTEMS OPC

AL- SEDRIAH HOLDING COMPANY

NASSER AHMED M. SH. AL-KAABI

And

TAREK FOUAD

---

## SHAREHOLDERS AGREEMENT

---

CLA22196-12 SOuLA Signing SHA 18/3/2013

TF

EXHIBIT 3, PAGE 32

Table of Contents

1.   DEFINITIONS AND INTERPRETATIONS ........................................................... 4

2.   ESTABLISHMENT OF THE COMPANY ........................................................... 6

3.   INCREASE AND REDUCTION OF CAPITAL AND ADDITIONAL CAPITAL
     REQUIREMENTS ........................................................................................ 7

4.   CONDITIONS PRECEDENT ........................................................................... 8

5    BOARD OF DIRECTORS AND QUORUM ....................................................... 8

6.   GENERAL ASSEMBLY AND POWERS ........................................................... 10

7    NON-COMPETITION AND EXCLUSIVITY ....................................................... 11

8    INTELLECTUAL PROPERTY RIGHTS ............................................................. 11

9    FINANCE FOR THE COMPANY ..................................................................... 12

10   ACCOUNTING MATTERS, BUSINESS PLANS & DIVIDEND POLICY ............. 12

11   CONFIDENTIALITY ....................................................................................... 13

12   ISSUANCE OF SHARES TO ADDITIONAL PARTIES ....................................... 13

13   TAX MATTERS ............................................................................................. 14

14   TERMINATION ............................................................................................. 14

15   WARRANTY .................................................................................................. 14

16   DISPUTE RESOLUTION ................................................................................ 14

17   GOVERNING LAW AND JURISDICTION ........................................................ 15

18   NOTICES ...................................................................................................... 15

19   MISCELLANEOUS ........................................................................................ 16



_TF_

EXHIBIT 3, PAGE 33

**THIS SHAREHOLDERS AGREEMENT ('Agreement')** is made this 18th day of March 2013.

**BETWEEN**

1. **Salam International Investment Limited- QPSC** (CR No. 20363), a Qatar public shareholding company listed on the Qatar Exchange and incorporated under the laws of Qatar with its address at P.O. Box 12026, Doha, Qatar ("**Salam**") and represented by its authorised signatory and officer, Hussam Abdulsalam Abu Issa, Chief Operating Officer;

2. **Soula Systems OPC** (CR No. 55613) , a single person company organized under the laws of Qatar with its address at 840 Al-Taameen Street, PO Box 17693, Doha - Qatar ("**Soula**" and which definition includes its owner) represented by its authorised signatory, Mohammed Almannai;

3. **Al-Sedriah Holding Company L.L.C** (CR No. 32197), a limited liability company organised under the laws of Qatar with its address at P.O. Box 18129, Doha, Qatar ("**Al-Sedriah**") and represented by its authorised signatory, Mohammed Almannai;

4. **Nasser Ahmed M SH Al-Kaabi** (ID No. 26963400293), a Qatari national with his address at 840 Al-Taameen Street, PO Box 17693, ("**Alkaabi**");

**AND**

5. **Tarek Fouad** (ID No. 26682600828), a British national with his address at 840 Al-Taameen Street, PO Box 17693, ("**Fouad**")

(Salam, Soula, Al-Sedriah, Alkaabi and Fouad shall be referred to collectively as "**Parties**" and individually as a "**Party**").

**WHEREAS**

A. Soula is engaged in the business of ICT, security, cloud computing, cyber security and owning shares in other companies, and is desirous of co-operating with Salam to expand and develop the said business in Qatar and other countries to be agreed upon between the Parties ("**Territory**").

B. Soula intends to transform itself from a Single Person Company to a Limited Liability Company ("**Company**") pursuant to Article 267 of the Commercial Companies Law ("**Transformation**").

C. Salam is a public shareholding company engaged in diversified businesses and is desirous of co-operating with Soula on business opportunities pertaining but not limited to the business of ICT, security, cloud computing and cyber security in the Territories ("**Business**").

D. Al-Sedriah is a commercial company involved in various commercial activities including commercial investment activities, and is desirous of investing and acquiring

CLA22198-12 SOULA Signing SHA 12/3/2013                                   Page **3** of **18**

a shareholding in the Company after its Transformation on the terms and conditions set out in this Agreement.

E.    Fouad is involved in the management of Soula and is desirous of investing and acquiring a shareholding in Soula after its Transformation on the terms and conditions set out in this Agreement.

F.    Alkaabi is the owner of Soula and is desirous of investing and acquiring a shareholding in Soula after its Transformation on the terms and conditions set out in this Agreement.

G.    Pursuant to a Memorandum of Understanding dated 17th December 2012 between Salam and Soula, Salam has agreed to invest and acquire a shareholding in Soula after Transformation on the terms and conditions set out in this Agreement.

H.    The Parties wish to enter into this Agreement:

   (a)    to define their relationship in relation to the Transformation of Soula into the Company and its subsequent operation;

   (b)    to subscribe for the Company's shares; and

   (c)    to define their respective obligations;

   all on the terms and conditions as set out in this Agreement.

I.    In contemplation of the aforesaid intentions the Parties propose to become Shareholders in a limited liability company ('**LLC**') incorporated and with its headquarters in Qatar ('**Company**') of which they will be the shareholders in accordance with the shareholding ratio and other terms and conditions contained in this Agreement.

J.    Accordingly the Parties have now agreed to enter into this Agreement to undertake to form the Company and to subscribe for shares in the Company on incorporation and to enter into certain commitments and otherwise regulate their obligations and rights in relation to the Company in the manner appearing below.

**IT IS HEREBY AGREED** as follows:

**1.    DEFINITIONS AND INTERPRETATIONS**

In this Agreement including the Recitals:

'**Articles**' means the Articles of Association of the Company;

'**Board**' means the Board of Directors as described in clause 5 of this Agreement;

'**Business**' means all existing and new projects and scope of works relating to the ICT, security, cloud computing and cyber security and any other activities as proposed by the Board of Directors and approved by the Shareholders;





'**Business Plan**' shall have the meaning as described into clause 10.2 of this Agreement;

'**Chairman**' means the Chairman of the Board of Directors;

'**Companies Law**' means the Qatar Commercial Companies law No (5) of 2002 and related amendments;

'**Chief Executive Officer/ CEO**' shall have the meaning as described into clause 5.6 of this Agreement;

'**Deadlock**' shall be deemed to have occurred if any of the following matters has been considered at a meeting of the Board or at a meeting of the General Assembly and no resolution has been passed by such meeting or the necessary quorum is not present at two successive Board meetings (or proposed Board meetings) or three successive General Assembly meetings (or proposed General Assembly meetings) duly convened. The matters are:

(i)     the approval of the annual accounts of the Company and/or any declaration or paying of any dividend or other distribution in respect of any share capital of the Company;

(ii)    the approval of the business plan/budget of the Company;

(iii)   approving or amending the internal policies of the Company;

(iv)    appointment or removal of the Company's auditors and/ or the Company Manager;

(v)     raising funds to keep the Company operational and to avoid bankruptcy save as except in cases of expansion or new investments; and

(vi)    any other matter or resolution which requires consent of both Parties.

'**Effective Date**' means the date of this Agreement;

'**Finance Manager/CFO**' shall have the meaning as described in Clause 5.10 of this Agreement;

'**Financial Year**' means any accounting reference period of the Company, of whatever duration;

'**Incorporation Period**' means the period from the Effective Date of this agreement until the completion of the official registration of the Company by virtue of the official issuance of the commercial registration certificate of the Company provided that the Incorporation Period does not exceed 3 months unless mutually extended in writing on a date before the expiry of the Incorporation Period;

'**Intellectual Property Rights**' means all registered or unregistered patents, copyrights trademarks, trade names or any design, invention, trade secrets, know-how, process, product, software database, and other proprietary information, tangible or intangible, irrespective of form, capable of legal protection;

'**SA**' means the Services Agreement which includes but is not limited to key services such as visa processing, residences, visit, housing rents as the Company may from time to time request and which may be entered into between the Parties;



'**Shares**' means the ordinary voting shares with a nominal value of QR100 each in the capital of the Company;

'**Shareholders**' means the registered owners of Shares at any relevant time, being initially Salam, Al-Sedriah, Alkaabi and Fouad;

'**Territory**' means Qatar and such other countries mutually agreed upon between the Shareholders;

'**Transformation**' means the transformation of Soula from a Single Person Company to a Limited Liability Company pursuant to Article 267 of the Companies Law;

## 2.   ESTABLISHMENT OF THE COMPANY

2.1   Immediately or as soon as practicable following the execution of this Agreement the Parties shall procure the Transformation and establishment of the Company:

2.1.1   under the name of "**SOULA SYSTEMS LLC**";

2.1.2   having an initial registered and paid up share capital of QR200,000 ("Capital") divided into 2000 shares, the nominal value of each share being QR100, all of which shall carry equal rights ("Shares");

2.1.3   with an Articles of Association in the form to be agreed upon between the Parties and its Directors to be appointed in accordance with Clause 5 of this Agreement and Article 7 of the Articles;

2.1.4   and each of the Parties shall respectively procure that the Articles shall be subscribed by them or their respective nominees and that all other necessary documents are executed, made or filed by them or their respective nominees or representatives and all expenses paid in order to for the Transformation and incorporation of the Company be established on the terms set out in this Agreement.

2.2   The Parties agree that they shall bear all responsibilities and costs and expenses including those related to the formation and operations of the Company according to their shareholding ratio as set out herein below and that each of them shall account to one another for the same accordingly. The Parties agree that they shall share profits, and bear losses and liabilities, if any in their shareholding ratio. The Parties shall work in good faith and make best efforts to further the business of the Company.

2.3   Salam shall subscribe for the Shares representing 20% equity of the Company, Al-Sedriah shall subscribe for the Shares representing 40% equity of the Company, Alkaabi shall subscribe for the Shares representing 20% equity of the Company and Fouad shall subscribe for the Shares representing 20% equity of the Company.

2.4   The Parties shall procure that:

2.4.1   the Parties in accordance with Clause 5 of this Agreement shall (subject to them respectively consenting in writing so to act) appoint the Directors of the Company;

*T F*

2.4.2    the auditors of the Company shall be recommended by the Board and appointed by the shareholders on an annual basis; and

2.4.3    the bankers to the Company shall be a bank registered in Qatar and to be agreed by the Board.

2.5    The principal activity of the Company shall unless and until the Shareholders otherwise agree be as set out in the definition of Business in this Agreement and as set out in the Articles or any such other activities carried out by the subsidiaries, associates or affiliates of the Shareholders as may be agreed in writing between the Shareholders.

## 3.    INCREASE AND REDUCTION OF CAPITAL, AND ADDITIONAL CAPITAL REQUIREMENTS

3.1    The Company's capital may be increased by a 75% resolution of the Shareholders passed at a Shareholders Meeting or by written resolution signed (if convenience so requires, in more than one document), on behalf of all Shareholders.

3.2    Upon increase in the capital each Shareholder shall have the right to subscribe for the number of new Shares which is in proportion to the number of Shares which it owns on the date of that increase; provided that:

3.2.1    if a Shareholder has subscribed for less than the proportion to which it is entitled, the remaining new Shares may be subscribed for by the other Shareholders in proportion to the number of Shares respectively owned by them prior to the proposed increase; and

3.2.2    the shareholding of any foreign shareholder shall not exceed the legal limit.

3.3    If the capital exceeds the needs of the Company or if the Company has incurred losses, the capital may be reduced by a unanimous decision of the Shareholders passed at a Shareholders Meeting or by written resolution signed (if convenience so required in more than one document) on behalf of all the Shareholders, provided that the capital may not be reduced to less than the minimum then permitted by law.

3.4    The Parties have agreed that upon Transformation and after the initial subscription for the Shares, the capital shall be increased to QR5, 200,000 divided into 52,000 shares with a nominal value of QR 100 each "Mandatory Capital Increase".

3.5    The Parties acknowledges that within 7 days from the Effective Date, Salam shall pay the sum of QR 5,000,000 for its Shares and for the increase in capital as stated in Clause 3.4 above in cash and that the increased capital of the Company shall thereafter be registered as follows:

T F

| Name of Shareholder | Percentage of Shareholding |
|---|---|
| Al-Sedriah Holding Company (CR No. 32197) | 40% |
| Nasser Ahmed M SH Al-Kaabi (ID No. 26963400293) | 20% |
| Salam International Investment Limited -QPSC (CR No. 20363) | 20% |
| Tarek Fouad (ID No. 26682600828) | 20% |
| TOTAL | 100 % |

3.6   The Parties agreed that they shall at the initial Shareholders' Meeting or General Assembly of the Company, cast their votes to effect the Mandatory Capital Increase of the Company as above and do all that is necessary to ensure that the Shares are registered in accordance with the provisions of this Agreement.

3.7   The Parties agreed that for any new company to be incorporated by Soula, the percentage of shareholding distribution between themselves or to include third party(s) shall be agreed at the time of such incorporation.

**4.   CONDITIONS PRECEDENT**

4.1   This Agreement is conditional upon the satisfaction of the following conditions:

4.1.1   the shareholders of the Parties (as the case may be) having duly passed the required resolutions approving this Agreement at their respective general assembly meetings or equivalent;

4.1.2   any required permits, approvals or other third party consents having been obtained by the Parties where such are required to enter into this Agreement;

**5   BOARD OF DIRECTORS AND QUORUM**

5.1   The management of the Company shall be carried out by the Board of Directors ('**Board**') comprised of 4 members at all times while this Agreement remains in force

C:A22196-12 SOULA Signing SHA 18/1/2013                                                         Page 8 of 18

TF

and the respective entitlements of the Shareholders to appoint or remove Directors with or without portfolios to be agreed by the Shareholders.

5.2 The Parties agree that each Party who is at least 10% Shareholder of the Company shall be always represented by one member representing it at the Board and that such representation shall apply to any future Shareholder of the Company.

5.3 The Parties agree that SIIL shall always retain a Board of Directors member seat and that the initial representative of SIIL at the Board of Director is Mr. Abdul Salam Abu Issa.

5.4 All matters requiring approval of the Board or to be decided by the Board shall be decided by a simple majority of a meeting of the Directors of that Board that is quorate in accordance with Clause 5.5. In case of a tied vote, the Chairman shall have a casting vote. If the Chairman for the time being is unable to attend any meeting of the Board, then the Deputy Chairman who shall become the Chairman of the meeting and he entitled to vote in accordance with this Agreement. The items listed in Schedule 1 shall require the approval of the Board of the Company seeking to effect such matter and shall not be permitted to be carried out by any management levels or employees beneath the Board.

5.5 The quorum at a Board meeting shall be 3 Directors. No business shall be conducted at any Board meeting unless a quorum is present at the beginning of the meeting and at the time when there is to be voting on any business and:

5.5.1 in the event of failure to reach quorum after 1 hour of convening a meeting of the Board, the meeting shall be adjourned to such time (not being later than 7 days after the date of the original meeting) as the Director or Directors present at the meeting shall determine, or if none, shall be determined by the Company secretary;

5.5.2 if there shall be no quorum after one hour of the time fixed for the adjourned 2nd meeting, the 2nd meeting shall be referred to the General Assembly by any of the board members or Shareholders or the Company's CEO;

5.5.3 the meetings of the Board shall normally be held in Qatar or such other place as may be mutually decided by the Parties. In the event entry to any nominated Director is denied into Qatar for any reason whatsoever, the scheduled board meeting shall be adjourned and held within a reasonable time period as may be agreed between the Parties in writing, in a location in the United Arab Emirates to be agreed upon between the Parties in writing.

5.6 At least 15 Business Days clear written notice shall be given for any meeting of the Board to all the Directors. A meeting of the Board may be called by shorter notice with the unanimous consent of all the Directors of the Company. The Company Manager or the Company secretary shall send notice for convening a Board meeting to all the Directors together with a detailed agenda of the business proposed to be transacted at the board meeting. The Board meeting may be called without a prior invitation in case of urgent matter.

5.7 Subject to the provision of this Agreement and applicable Laws, the Board shall be entitled to pass circular resolutions in relation to routine/ordinary matters required in

connection with operations of the Company such as for example opening and closing of bank accounts, change in signatories conditional that an original signed copy of the circular resolution is retained.

5.8     In the event of Deadlock at the Board level, the matter shall be decided at the General Assembly of the Company convened in accordance with Article 10 of the Articles.

5.9     The Board shall have the power to delegate the daily administration and operations of the Company to the Company's CEO, who shall be appointed by the Board.   The Board will issue the CEO a job description defining the limits of financial spending and exposure.

5.10    The Finance Manager shall administer and execute the financial policies of the Company. The Finance Manager shall be appointed by the Board who will define his job description.

5.11    The CEO and or the Finance Manager may be removed at any time by the resolution of the Board for non-performance or dereliction of duty or for any other reason as provided for in the Companies Law.

5.12    Unless otherwise agreed the Parties shall procure that Board meetings are convened and held at least once each three months in a year or upon request by a Director of the Company.

5.13    Minutes shall be taken for all Board meetings and the Minutes of Meetings have to be approved by the Board of Directors in the next meeting.

## 6       GENERAL ASSEMBLY AND POWERS

6.1     The Parties undertake that in compliance with Article 16 of the Articles that no amendments of the Company's Articles of Association, increase or reduction of the Company share capital shall be effected without the approval of Shareholders representing 75% of the shareholders present and voting.

Subject to the requirements under applicable Laws, other resolutions of the Shareholders shall be passed by a simple majority of 51% of the Shareholders present and voting.

Notwithstanding the above, the liabilities of the Shareholders shall not be increased without their unanimous agreement.

6.2     Voting on all matters to be considered at a General Assembly of the Shareholders shall be by way of a poll unless otherwise agreed upon in writing between the Parties.

6.3     At least 21 Business Days clear written notice shall be given for any General Assembly of the Shareholders of the Company.

6.4     The General Assembly shall normally be held in Qatar or such other place as may be mutually agreed in writing by majority of the Shareholders of the Company.

6.5     The quorum for a General Assembly shall be a minimum of 51% Shareholders present and voting and;

     6.5.1    in the event of failure to reach quorum after one hour of convening a meeting of the Shareholders, the meeting shall be adjourned to such time (not being later than seven days after the date of the original meeting) as the shareholder(s) present at the meeting shall determine, or if none, shall be determined by the Company secretary;

     6.5.2    if there shall be no quorum after one hour of the time fixed for the adjourned 2nd meeting, the 2nd meeting shall be further adjourned as aforesaid; and

     6.5.3    if there shall be no quorum after one hour of the time fixed for the 3rd adjourned meeting, it shall be deemed to be a Deadlock situation.

6.6     In the event of Deadlock at the Shareholders level, the matter shall be decided in accordance with the dispute resolution procedure in Clause 16 of this Agreement.

## 7    NON-COMPETITION AND EXCLUSIVITY

Each Party warrants that it has entered into this Agreement in good faith and shall use its best endeavours to procure that all contracts, agencies and commissions or any other form of pecuniary benefit related to the Business contemplated by the Company arising from the Effective Date but prior to the incorporation of the Company shall inure to the benefit of the Company.

## 8    INTELLECTUAL PROPERTY RIGHTS

8.1     Each Shareholder shall be the owner of all existing Intellectual Property Rights in existence as at the date of this Agreement which it has created or which is owned by or is licensed to such Shareholder.

8.2     This Agreement or any other document, deed, agreement, understanding or conduct of the Shareholders pursuant to or in connection with this Agreement shall in no manner be deemed to be a grant of any right or license to its Intellectual Property Rights by a Shareholder to the Company or the other Shareholder, unless otherwise specified in writing.

8.3     Where any new material is created for the purpose of this joint venture by any Shareholder then, save to the extent that such material embodies the Intellectual Property Rights of the any other Shareholder, all the Intellectual Property Rights in such new material shall belong to the Shareholder which creates it.

8.4     The Shareholders agreed that their Intellectual Property Rights that are embodied in any new material created for the purposes of this Company that is necessary for proper functioning of the new materials, shall be licensed or granted to the Company on such terms and conditions as may be agreed between the Shareholders and the Company in writing.

8.5     Intellectual Property Rights developed within the Company shall always be the sole property of the Company. The Shareholders agreed that Intellectual Property Rights owned by the Company can be licensed to any of the shareholders on such terms and conditions as may be agreed between the Shareholders and the Company in writing.

8.6     In the event of termination of this Agreement, the Intellectual Property Rights shall be subject to bidding between the Shareholders and open to third parties, provided that the fair market value of such Intellectual Property Rights has first been determined through appropriate means and evaluation, and the Intellectual Property Rights of the Company shall belong to the Shareholder or a third party making the highest bid.

## 9     FINANCE FOR THE COMPANY

9.1     Within the limits of the agreed annual budget of the Company, the Parties shall each use all reasonable endeavors to procure that the working capital requirements of the Company (to the extent not met out of the subscription money referred to in Clause 2) shall be satisfied as far as practicable by shareholders loans obtained from each Party subject to mutual agreement on their respective proportions.

9.2     In the event that such borrowings pursuant to Clause 9.1 above cannot be obtained or made available in the amounts required by the Board for any reason, then the Parties each will seek to provide the same through borrowings from banks and other similar sources on the most favorable terms reasonably obtainable. PROVIDED ALWAYS unless the Parties otherwise so agree no such lender or prospective lender shall be allowed to obtain any interest (direct or indirect) in the share capital of the Company as a condition of such borrowings.

## 10     ACCOUNTING MATTERS, BUSINESS PLANS & DIVIDEND POLICY

10.1    The Parties shall procure that:

10.1.1  the Company shall at all times maintain accurate and complete accounting and other financial records in accordance with the requirements of all applicable laws and generally accepted accounting principles applicable in the State of Qatar;

10.1.2  management accounts and financial statements containing such information as either party shall reasonable require shall be prepared and dispatched by the CEO to the Parties within 15 days of the end of each 3 months period or a financial quarter; and

10.1.3  each Party and its respective authorized representatives shall be allowed access with a two weeks' notice, to examine the books and records of the Company not more than twice in one financial year.

10.2    The Parties shall procure that the CEO prepare a business plan for the Company for each Financial Year which shall include the following details:

10.2.1  an estimate of the working capital requirements of the Company incorporated within a cash flow statement;

EXHIBIT 3, PAGE 43

10.2.2  a projected profit and loss account;

10.2.3  an operating budget (including estimated capital expenditure requirements) and balance sheet forecast;

10.2.4  a review of projected business;

10.2.5  a financial report which includes an analysis of the results of the Company for the previous Financial Year compared with the business plan for that Financial Year, identifying variations in sales, revenues, costs and other material items.

10.3   The first such business plan for the Financial Year ending 31/12/2013 shall be prepared within 60 days of the Effective Date. Business plans for subsequent Financial Years shall be submitted for approval of the Board not later than 60 days before the commencement of the Financial Year to which they relate.

10.4   Subject to the circumstances prevailing at the relevant time including in particular the working capital requirements of the Company it is the intention of the parties that the Company shall distribute profits by way of dividend in respect of each Financial Year provided the same will not contravene the Articles and the Companies Law.

## 11   CONFIDENTIALITY

The Parties shall procure that the Company does not (except insofar as may be necessary to perform its duties under this Agreement or required by law) directly or indirectly disclose at any time hereafter to any other corporation, entity or individual whatsoever or whomsoever any information as to the terms, conditions or provisions of this Agreement or any other information not generally available to third parties as to the business, secrets, dealings, transactions or affairs of or relating to any Party or the Company PROVIDED ALWAYS that the mutual obligation of preserving confidentiality at all times shall also apply between the Parties themselves.

## 12   ISSUANCE OF SHARES TO ADDITIONAL PARTIES

12.1   In the event that a strategic shareholders are identified which is capable of bringing operational and added value to the Business, the Company shall issue new shares and increase capital in order for strategic shareholders to subscribe and purchase increased shares provided that such transfer to strategic shareholder and dilution of shares of the current Shareholders of this Agreement shall not result in reduction of their shareholding to become less than 10% of the Company's increased capital.

12.2   No subscription shall be accepted by the Company for strategic shareholders shares except with reasonable notice provided and the written consent of current Shareholders with a majority of 75% of shareholding.

12.3   The additional shares shall be offered to the strategic shareholders in such proportions, price and upon terms determined by the General Assembly with the approval of a majority 75% of the Company shareholding .

**13   TAX MATTERS**

The Company shall pay all related taxes on behalf of the Parties which shall be deductible from the dividends payable to each Party. Nothing contained in this clause shall otherwise exempt the Parties of other individual legal obligations to pay taxes under the applicable laws.

**14   TERMINATION**

14.1   This Agreement shall continue in full force and effect until the Company is dissolved or expired in accordance with the provisions of Article 24 of the Articles or the provisions hereunder or if any of the Parties hereto ceases to be a shareholder of the Company or if this Agreement is terminated by mutual consent of the Parties.

14.2   This Agreement shall terminate immediately if an effective resolution is passed to wind up the Company, a liquidator is otherwise appointed (but without prejudice to any rights any party may have against any other arising prior to such termination) or such other event as set out in Article 24 of the Articles.

**15   WARRANTY**

15.1   Each Party warrants for the benefit of the others that it is empowered to enter this Agreement and all instruments required or contemplated by this Agreement and to give effect to each and every of its obligations undertaken or to be undertaken under this Agreement or pursuant to these instruments.

15.2   Each Party further warrants that this Agreement and all instruments required or contemplated by or pursuant to this Agreement, when executed, shall be binding and legally enforceable Agreement, instruments against the Parties executing the same.

15.3   Each Party further warrant that the representations made by each party in this Agreement are true and correct representations and nothing material has been concealed therefrom.

15.4   Each Party further warrants that it is legally incorporated and validly existing under the laws of their respective jurisdictions.

**16   DISPUTE RESOLUTION**

16.1   All disputes between the Parties shall be settled by the Parties amicably through good faith discussions upon the written request of any Party stating out clearly the grounds of dispute. In the event that any such dispute cannot be resolved thereby within a period of 30 days after such notice has been received by the other Party ('Dispute Notice'), such dispute shall be finally settled by arbitration in Doha, Qatar, using the English language, and in accordance with the rules of the Qatar International Centre for Arbitration ("QICA") by a tribunal of 3 arbitrators. Judgment upon the award so rendered may be entered in any court having jurisdiction or application may be made to such court for judicial acceptance of any award and an order of enforcement, as the case may be.

CIA72196-12 SOULA Signing SHA 13/3/2018

16.2   The parties agree that such Dispute Notice or arbitration proceedings initiated under this Clause 16 shall not suspend or terminate the performance of any business or projects being carried out at such time between the parties unless mandated by law.

17   **GOVERNING LAW AND JURISDICTION**

This Agreement shall be governed by and construed in accordance with the laws of the State of Qatar.

18.   **NOTICES**

Any notice to be given or other required communication hereunder shall be in writing and shall be deemed sufficiently delivered if sent:

(a)   by certified mail, return receipt requested; or

(b)   by recognized International courier service, or

(c)   by facsimile with transmission report, or

(d)   by e-mail with confirmation of receipt requested, or
when delivered in person, to the respective addresses as set out in the following:

**SALAM**

P.O. Box 12026, Doha, Qatar

**Soula**

840 Al-Taameen Street, PO Box 17693, Doha - Qatar

**AL-SEDRIAH**

P.O. Box 18129, Doha, Qatar

**ALKAABI**

840 Al-Taameen Street, PO Box 17693, Doha - Qatar

**FOUAD**

840 Al-Taameen Street, PO Box 17693, Doha – Qatar

or to such other address or facsimile number as a Party may have specified to the other Party in writing delivered in accordance with this clause 18.

CLA22198-12 SOULA Signing SHA 18/3/2013                    Page 15 of 18

**19.    MISCELLANEOUS**

19.1    This Agreement together with the Articles of Association of the Company and other documents attached hereto constitutes the entire agreement between the parties in relation to the subject matter and supersedes the MOU and all other previous agreements and understandings, whether oral or written, in relation thereto.   The Articles was drafted in reflection of the details provided in this Agreement. The Articles provisions are extracted from this Agreement to meet the official requirements and in any event if any provisions of the Articles at any time conflict with the provisions of this Agreement the provisions of the Articles shall prevail.

19.2    None of the Shareholders shall have the right to assign its rights or obligations under the Agreement without prior written consent of the other Shareholders.

19.3    No exercise or failure to exercise or delay in exercising any right power or remedy vested in any party under or pursuant to this Agreement shall constitute a waiver by that Party of that or any other right power or remedy. A waiver shall be valid only if it is in writing and signed by an authorized representative of the waiving Party.

19.4    Nothing in this Agreement shall be deemed to constitute any Party the agent of the other Party or Parties or otherwise entitle any Party to have authority to bind any other Party or Parties to this Agreement for any purpose.

19.5    This Agreement may not be amended, modified or supplemented except by a written instrument executed by persons duly authorized on behalf of the Parties.

19.6    If any provision of this Agreement or any part is held or declared to be a violation of public policy, illegal, unenforceable, void, voidable, or invalid at law, or to be in breach of a rule, regulation, ordinance or by-law, that provision or part shall be severable and of no force or effect and be deemed omitted from this Agreement without affecting the validity of the remaining provisions of this Agreement and parts which other provisions and parts of this Agreement shall remain in full force and effect.

19.7    This Agreement may be executed in any number of counterparts or duplicates each of which shall be an original but such counterparts or duplicates shall together constitute one and the same Agreement.

19.8    Time shall be of the essence for the purposes of any provisions of this Agreement.

**IN WITNESS WHEREOF** the Parties hereto have caused this Agreement to be executed as of the date first written above, by their duly authorized representatives

EXHIBIT 3, PAGE 47

SIGNED by

for and on behalf of

**Salam International Investment Limited- QPSC**

Name:
Qatar ID No:
Designation:
Date:

SIGNED by

for and on behalf of

**Soula Systems OPC**

Name:
Qatar ID No:
Designation:
Date:

SIGNED by

for and on behalf of

**Al-Sedriah Holding Company**

Name:
Qatar ID No:
Designation:
Date:

SIGNED by

for and on behalf of

**Nasser Ahmed M SH Al-Kaabi**

Name:
Qatar ID No:
Designation:
Date:

SIGNED by

for and on behalf of

**Tarek Fouad**

Name:
Qatar ID No:
Designation:
Date:

EXHIBIT 3, PAGE 48

## SCHEDULE ONE

**MATTERS RESERVED FOR BOARD OF DIRECTORS:**

1. approval of the business plan of the Company;
2. approving or amending internal Company policy and defining the responsibilities of and delegating power to the management team and their compensation;
3. the Board shall decide and set out the financial guidelines for the CEO and for the Board including the Financial limits within which the CEO may operate the Company The Board shall decide for the CEO the limits for entering into unincorporated joint ventures, entering into any contract or proposal with the limits decided by the Board of Directors. The Board shall decide the limits for the CEO to borrow any money or obtain any advance, credit or financial accommodation.
4. issue any general power of attorney or any other power of attorneys that are beyond the CEO's authority to represent the Company;
5. the appointment or removal of the CEO, the Finance Manager and/or the Company's executive management;
6. Deciding the limits within which the CEO may sign and execute contracts, agreements, applications and documents required to carry out the activities of the Company in accordance with the approved annual budget;
7. appointing lawyers and representatives to represent the Company in whatsoever actions as they deem appropriate;
8. recommending to the Shareholders to agree on arbitration, reconciliation or settlement.

**MATTERS RESERVED FOR GENERAL ASSEMBLY:**

1. change of the principal activity of the Company from that described in the Articles;
2. change in the share capital of the Company;
3. any change or amendment in the Articles of Association;
4. approval of annual accounts of the Company and any declaration or paying of any dividend or other distribution in respect of any share capital of the Company;
5. the appointment or removal of the Company's Auditors;
6. Any other matter that may be submitted to its consideration by any of the Shareholders and/or by the Board, in this latter case, among others, those referred to in clause 5.8 above;
7. Approval of annual budgets;
8. acquiring the business of, any shares in, or assets of any other company or entity or increasing (or reducing) Company's shareholding in any other company, including granting any option rights in respect of the same as approved annual budget.



EXHIBIT 3, PAGE 49



وزارة الاقتصاد والتجارة
**Ministry of Economy and Commerce**

<span style="color:#8B0000">**Registration and Commercial Licenses Department**</span>

إدارة التسجيل
والتراخيص التجارية

مستخرج ببعض بيانات السجل التجاري

2016/12/08

| | | | |
|---|---|---|---|
| عدد الفروع: | 0 | رقم السجل التجاري: | 56630 |
| السمة التجارية: | ديجيتال سولا سيستمز لتقنية المعلومات | الأسم التجاري: | |
| تاريخ انتهاء السجل: | 08/07/2017 | تاريخ إنشاء السجل: | 09/07/2012 |
| رأس المال: | 5000000 | الشكل القانوني: | شركة ذات مسئولية محدودة |
| جنسية المنشأة: | قطر | حالة السجل: | نشط |

**معلومات الاتصال**

| | | | |
|---|---|---|---|
| أرقام الاتصال: | 40126616 | صندوق البريد: | 17693 |

**المالك**

| الأسم | رقم الإثبات | رقم السجل | الجنسية |
|---|---|---|---|
| سولا سيستمز | | 55643 | قطر |

**المدراء (المخولون بالتوقيع)**

| الأسم | رقم الإثبات | رقم السجل | الجنسية | الصفة (الصلاحية) |
|---|---|---|---|---|
| طارق   فؤاد | 26682600828 | | بريطانيا | صلاحيات كاملة ومطلقة - مدير |
| عبدالسلام عيسى | 28263403252 | | قطر | صلاحيات كاملة ومطلقة - مدير |

1 of 2
رقم السجل: 56630



تشهد غرفة تجارة وصناعة قطر بأن المنشأة المذكورة أعلاه سجلت لدى
Chamber certifies that the above mentioned establishment has been registered

EXHIBIT 3, PAGE 50



**وزارة الاقتصاد والتجارة**
**Ministry of Economy and Commerce**

Registration and Commercial
Licenses Department

إدارة التسجيل
والتراخيص التجارية

مستخرج بعض بيانات السجل التجاري

| | | | | عبدالسلام محمد ابوعيسى |
|---|---|---|---|---|
| صلاحيات كاملة ومطلقة - مدير | قطر | | 27663400507 | محمد عبدالله علي مطر المناعي |

**الأنشطة التجارية**

| الرقم | إسم النشاط |
|---|---|
| 2001436 | استشارات تقنية المعلومات |
| 721000 | تقديم الخبرة والحلول الشاملة والاستشارات في نظم المعلومات |
| 2001449 | خدمات شبكات تقنية المعلومات |

| الرقم | إسم النشاط |
|---|---|
| 2001418 | استشارات الشبكة الالكترونية |
| 2002336 | خدمات تكنولوجيا المعلومات |
| 724000 | الخدمات ذات الصلة بالحاسب الآلي |

2 of 2
رقم السجل : 56630

**QATAR CHAMBER**
غرفة قطر

نشهد غرفة تجارة و صناعة قطر بأن المنشأة المذكورة اعلاه سجلت لدينا
Qatar Chamber certifies that the above mentioned establishment has been registered

## Ministry of Economy and Commerce

Registrations and Commercial
License Department

## Company Commercial Registration Data

08/12/2016

Commercial Registration Number: 56630
Commercial Name: Digital Soula Systems for
Information Technology
Registration date: 09/07/2012
Legal status:  Limited Liability Company
Commercial registration status: active
Number of branches: 0

Number of Branches: 0

Expiry date: 08/07/2016
Capital: 5000000
Company Nationality: Qatar

### Contact Information

Mailbox: 17693

Contact number 40126616

### Owner

| Name | Confirmation Number | Registration Number | Nationality |
|------|---------------------|---------------------|-------------|
| Soula Systems | | 55643 | Qatar |

### Managers (Authorized Signatories)

| Name | ID Number | Registration Number | Nationality | Authority |
|------|-----------|---------------------|-------------|-----------|
| Tarek Fouad | 26682600828 | | British | Manager (full and unrestricted authority) |
| Abdelsalam Eissa Abdelsalam | 28263403252 | | Qatar | Manager (full and unrestricted authority) |

**1 of 2**
Commercial Registration Number: 56630
**Chamber of Commerce**

Qatar chamber certifies that the above mentioned establishment has been
registered

# Ministry of Economy and Commerce

Registrations and Commercial
License Department

## Company Commercial Registration Data

| Mohamed Abdulla Ali Matar Al-Mannai | 27663400507 | | Qatar | | Manager (full and unrestricted authority) |
|---|---|---|---|---|---|

Commercial activity

| Number | Activity name |
|---|---|
| 2001436 | Information Technology Consultancy |
| 721000 | Full Service Consultancy |
| 2001449 | Information Technology Networking Services |

| Number | Activity name |
|---|---|
| 2001418 | Information Systems Consultancy |
| 2002336 | Information Technology Services |
| 724000 | Computer Related Services |

**2 of 2**
Commercial Registration Number: 56630
**Chamber of Commerce**

Qatar chamber certifies that the above mentioned establishment has been
registered

EXHIBIT 3, PAGE 53