JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 8:19-CV-01837-RGK-ADSx | Date | April 14, 2020 |
|---|---|---|---|
| Title | *Tarek A. Fouad v. The State of Qatar, et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams (Not Present) | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: | |
| Not Present | | Not Present | |

**Proceedings:** (IN CHAMBERS) Order Re: Defendant State of Qatar's Motion to Dismiss for Lack of Jurisdiction [DE 39], Nominal Defendant Digital Soula Systems' Motion to Dismiss [DE 40], and Plaintiff's Motion to Stay and Compel Arbitration [DE 48]

## I.  INTRODUCTION

This action arises out of a dispute regarding business dealings between the State of Qatar and a Qatari defense and security consultancy limited liability company. On September 25, 2019, Plaintiff Tarek A. Fouad ("Fouad," or "Plaintiff") filed a derivative action in district court in his role as shareholder on behalf of nominal defendant Digital Soula Systems ("DSS") against defendants The State of Qatar (by and through its Ministry of Defense ("MOD")), the Qatar Armed Forces ("QAF"), the Ministry of Economy and Commerce of Qatar ("MOEC"), and Does 1-30. (ECF No. 1.)

On January 20, 2020, Plaintiff filed a First Amended Complaint ("FAC") against The State of Qatar, QAF, and Does 1-30 (collectively, "Qatar Defendants") alleging: (1) Breach of Contract, (2) Fraudulent Promise, (3) Negligent Misrepresentation, (4) Unjust Enrichment, (5) Unfair Competition under the California Business and Professions Code 17200 et seq., (6) Interference with Prospective Economic Advantage, and (7) Declaratory Relief. (FAC, ECF No. 36.) Plaintiff seeks injunctive and monetary relief along with punitive damages, or, in the alternative, that the Qatar Defendants be compelled to arbitration. (FAC ¶ 140, ECF No. 36.) On February 3, the Qatar Defendants and DSS both filed Motions to Dismiss for lack of jurisdiction. (ECF Nos. 39, 40.)

Presently before the Court are the Qatar Defendants' Motion to Dismiss for Lack of Jurisdiction (ECF No. 39), Nominal Defendant DSS' Motion to Dismiss (ECF No. 40), and Plaintiff's Motion to Stay the Case and Compel Arbitration. (ECF No. 48.) For the following reasons, the Court **GRANTS** the Qatar Defendants' Motion, **DENIES** Plaintiff's Motion, and **DENIES as Moot** Nominal Defendant DSS' Motion.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 8:19-CV-01837-RGK-ADSx | Date | April 14, 2020 |
|---|---|---|---|
| Title | *Tarek A. Fouad v. The State of Qatar, et al.* | | |

**II.    FACTUAL BACKGROUND**

Plaintiff's FAC alleges the following:

Fouad is a U.S. and British citizen and resident of California. (FAC ¶ 5, ECF No. 36.) He is a founding member and current 20% shareholder of DSS, a limited liability consulting services company based in Qatar. DSS has three shareholders. (*Id.* at ¶ 5.) The other two shareholders are Lt. Col. Al-Mannai (active duty officer in the QAF at the time and 60% shareholder of DSS) and Mr. Abu-Issa (CEO of Salaam International and 20% shareholder of DSS). (*Id.* at ¶ 3-8.) The three shareholders make up the DSS Board of Directors ("Board of Directors"). Defendant QAF is an agent and instrumentality of the State of Qatar. (*Id.* at ¶ 7.)

DSS contracted with the State of Qatar to provide consulting services (the "Falcon Project") relating to the State of Qatar's acquisition of a Command, Control, Communications, Computers, and Intelligence defense system ("C4I System") for use with its Joint Operations Command. (*Id.* at ¶ 68-70.) Article 56.1 of the Consultancy Services Agreement for the Falcon Project specified that any disputes arising from the arrangement would be arbitrated under the rules of the International Chamber of Commerce International Court of Arbitration ("ICC") in London, England. (Consultancy Services Agreement, FAC Ex. 1, p. 104, ECF No. 36.) Article 56.2 specified that the agreement would be governed by the laws of the State of Qatar. *Id.*

In or around March 2015, DSS began performance under the Agreement. DSS consultants on The Falcon Project worked primarily out of private offices located in Qatar. The Consultancy Services Agreement specified that its aim was to acquire a C4I system, that it had a term of twelve months, and that it would be satisfied upon DSS' completion of eight milestones. (FAC ¶¶ 72, 74, ECF No. 36.) DSS worked closely with QAF officers from all branches of the military, and two DSS consultants also worked for two periods of two weeks in Fullerton, California to evaluate Raytheon's C4I system. (*Id.* at ¶ 76.)

Milestones one to five of the Consultancy Services Agreement were accordingly performed and delivered by DSS and duly paid by QAF. (*Id.* at ¶ 81.) Similarly, DSS performed milestone six and QAF subsequently paid DSS without dispute as to performance. (*Id.* at ¶ 82.) After these milestones, however, due to no fault of DSS, significant delays occurred. (*Id.* at ¶¶ 82-84.) DSS was told in meetings that if DSS continued to work on The Falcon Project, the remaining phases would take place in due course, DSS would be entitled to complete its work, and DSS would receive payment in full for the outstanding invoices and for the delays. (*Id.* at ¶ 85.) On January 10, 2016, the QAF confirmed that DSS had met all milestones to date and that "the project [would] likely be extended by an additional six months." (*Id.* at ¶ 74.) DSS continued to work on The Falcon Project and billed QAR 16,087,456 (US $4,419,626), but was never paid. This dispute arises out of the State of Qatar's failure to pay these agreed upon amounts under the Consultancy Services Agreement.

In or about June 2017, all three members of the DSS Board of Directors agreed to and made demand for payment, through Cooley (UK) LLP ("Cooley"), against the Qatar Defendants for dues

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 8:19-CV-01837-RGK-ADSx | Date | April 14, 2020 |
|---|---|---|---|
| Title | *Tarek A. Fouad v. The State of Qatar, et al.* | | |

owed under the Consultancy Services Agreement. (*Id.* at ¶ 15; *See* FAC, Ex. 1, ECF No. 36-1.) On March 7, 2018, DSS, through Cooley, sent a final demand letter to the MOD stating that DSS would commence arbitration if DSS did not receive payment under the Consultancy Services Agreement by March 22, 2018. (FAC ¶ 18, ECF No. 36.; FAC, Ex. 4, ECF No. 36-4.)

On or about March 20, 2018, the MOD directed Lt. Col. Abdulla Al Kuwari, Director of Legal Affairs, to deliver a threat to Lt. Col. Al-Mannai, warning him that the MOD would report him to the Emir of Qatar if he persisted in bringing an action against Qatar. (*Id.* at ¶ 19.) In short, the QAF ordered its officer, Lt. Col. Al-Mannai, and Mr. Abu-Issa, to cease all efforts to arbitrate this dispute and related that if such instructions were not followed, DSS and its shareholders would be subjected to sanction and reprisal by the State of Qatar. (*Id.* at ¶ 20.) Lt. Col. Al-Mannai then e-mailed Plaintiff and asked him to stop the arbitration. (*Id.* at ¶ 21; *Id.*, Ex. 5.)

On June 8, 2018, however, Plaintiff nevertheless filed a request for arbitration on behalf of DSS before the ICC (the "First Arbitration") seeking dues owed under the Consultancy Services Agreement. (*Id.* at ¶ 23.) On or about August 1, 2018, QAF, Lt. Col. Al-Mannai, and Mr. Abu-Issa began obstructing arbitration of the dispute by claiming DSS no longer sought to arbitrate this dispute, and that Mr. Fouad was not authorized to act on behalf of DSS. (*Id.* at ¶ 24.)[1] QAF failed to answer the First Arbitration. During this time, QAF became aware that Lt. Col. Al-Mannai and Mr. Abu-Issa had directed, received, and facilitated unauthorized bribes by Raytheon in the amount of QAR 7,006,750 (US $1,924,931), to go to the brother of the Emir of Qatar in an effort to secure a defense system contract from the QAF. (*Id.* at ¶ 25; Fouad Decl. ¶¶ 3-8, ECF No. 44.)

Between August 30, 2018 and November 1, 2018, DSS shareholders Lt. Col Al-Mannai and Mr. Abu-Issa and the Qatar Defendants entered into a settlement on behalf of DSS to release the Qatar Defendants (the "Settlement Agreement") from any possible claims involving the Consultancy Services Agreement in exchange for QAR 9,021,550 (U.S. $2,471,658). (FAC ¶ 26, ECF No. 36.) Plaintiff claims this settlement agreement is unenforceable because the Qatari Minister of Defense unconscionably compelled the other two DSS shareholders to enter into the Settlement Agreement, while the Qatar Defendants and the other two shareholders claim the agreement was mutual and enforceable. (*Id.*; Reply at 2:20-22, ECF No. 49.) The Settlement Agreement specified that Qatar law would govern the agreement and that the courts of Qatar would have exclusive jurisdiction over any disputes arising from the agreement. (Settlement Agreement, Mot. To Dismiss Ex. 1, p. 10, ECF No. 39-3.)

---

[1] The parties dispute whether Plaintiff remains acting manager of DSS. Plaintiff alleges that the other two shareholders falsely altered the registration of DSS with the MOEC in a fraudulent attempt to remove Fouad as manager, and that he remains manager of DSS pursuant to paragraph 5.2 of the Shareholder agreement, which specifies that a 10% shareholder shall be represented by one member of the board of directors and shall be a manager of the company. (*Id.* at ¶¶ 10–11, 34.) The remaining two shareholders of DSS allege that he was properly removed as acting manager and no longer has the capacity to bring a derivative action as a shareholder.

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-CV-01837-RGK-ADSx | Date | April 14, 2020 |
|---|---|---|---|
| Title | *Tarek A. Fouad v. The State of Qatar, et al.* | | |

On October 16, 2018, in response to the Qatar Defendants' failure to file a reply or pay half of the advance dues on the first ICC arbitration request, Plaintiff filed suit before the High Court of Justice in England on behalf of DSS and against himself. Plaintiff sought declaratory relief that he had the right to arbitrate on DSS' behalf in spite of the conflicting instructions of the other shareholders. (*Id.* at ¶ 29.) The High Court dismissed the action as an abuse of process, holding that if Fouad was, in fact, entitled to act on behalf of DSS, then "there [was] no dispute upon which it might be proper to consider the grant of declaratory relief," and that if he did not have the right to act on behalf of DSS, then "the proceedings [had] been wrongfully brought." (FAC, Ex. 10, ECF No. 36-10.) Subsequently, on February 8, 2019, the ICC dismissed Fouad's First Arbitration claim for non-payment of advance fees by the required deadline. (FAC ¶ 31, ECF No. 36; *Id.*, Ex. 11., ECF No. 36-11.)

On February 20, 2019, Fouad filed a second request for arbitration before the ICC ("Second Arbitration"). (FAC ¶ 32, ECF No. 36.) QAF did not answer the Second Arbitration and refused to pay half of the advance dues. (*Id.*; FAC, Ex. 12, ECF No. 36-12.) Thereafter, Fouad voluntarily withdrew his Second Arbitration claim in order to obtain relief in a United States District Court, either on the merits of his claims or, in the alternative, through compelling QAF to arbitrate in California. (FAC ¶ 33, ECF No. 36.)

Plaintiff brings this derivative action as a shareholder on behalf of DSS, alleging that the Settlement Agreement was coerced and seeking payment of past dues under the Consultancy Services Agreement from the Qatar Defendants. (FAC ¶ 140, ECF No. 36.) Plaintiff asks the Court to award actual and compensatory damages, among other forms of damages arising from the dispute, or, in the alternative, to compel arbitration in Orange County and appoint a single arbitrator. (*Id.*)

### III.    JUDICIAL STANDARD

#### A.    Rule 12(b)(3) and *Forum Non Conveniens*

A motion to dismiss based on a forum selection clause is treated as a motion to dismiss for improper venue under Federal Rule of Civil Procedure ("Rule") 12(b)(3). *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). Under this standard, the Court "must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Petersen v. Boeing Co.*, 715 F.3d 276, 279 (9th Cir. 2013) (quotation omitted). The Court need not accept the pleadings as true and may consider facts outside of the pleadings. *Id.*

#### B.    Motion to Stay

District courts have "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)); *Landis*, 299 U.S. at 254 ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes of its docket with economy of time and effort for itself, for counsel, and for litigants."). In exercising this discretion, courts weigh competing interests like "the possible damage which may result from the granting of a stay, the hardship or inequity

Case 8:19-cv-01837-RGK-ADS Document 62 Filed 04/14/20 Page 5 of 12 Page ID #:1885

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-CV-01837-RGK-ADSx | Date | April 14, 2020 |
|---|---|---|---|
| Title | *Tarek A. Fouad v. The State of Qatar, et al.* | | |

which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

## IV.  DISCUSSION

Plaintiff argues that the Settlement Agreement is a product of fraud, and now requests that the Court stay this case and compel arbitration in the United States under the Consultancy Services Agreement. Defendants make the following arguments in favor of dismissal: (1) the claims must be dismissed for *forum non conveniens* because the Settlement Agreement has a forum selection clause calling for claims to be governed by Qatar law under the courts of Qatar, (2) even if the Settlement Agreement is overlooked, the Consultancy Services Agreement has an arbitration clause calling for arbitration under the ICC in London, not the United States; (3) the Court lacks jurisdiction because QAF is subject to sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"); and (4) Fouad lacks standing under Qatari law to bring a shareholder derivative action on behalf of DSS.

The Court agrees that the Settlement Agreement's forum selection clause renders this Court an improper forum. Furthermore, even if the Court were to disregard that agreement as Plaintiff requests, the Consultancy agreement specifies arbitration in London, and the Court therefore has no power to order arbitration in the United States. The Court addresses each of these issues in turn.

"Although it is common to resolve challenges to personal jurisdiction before addressing motions to transfer venue…it is not required that courts do so. Courts may instead address venue applications at the threshold, 'when there is a sound prudential justification for doing so,' because 'neither personal jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction is.'" *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 741 (S.D.N.Y. 2013) (citations omitted); *Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1103 (C.D. Cal. 2001) (noting that the transferor court need not have personal jurisdiction over the defendant to order transfer); *Gillespie v. Prestige Royal Liquors Corp.*, 183 F. Supp. 3d 996, 1002 (N.D. Cal. 2016) (a court may address venue before personal jurisdiction where there is "sound prudential justification for doing so"). Further, "where subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007) (emphasis in original).

Here, the Court finds that it is proper to address venue prior to the question of jurisdiction under the Foreign Sovereign Immunities Act because the Court finds venue improper. Furthermore, an analysis of the issue of Plaintiff's standing to bring a shareholder derivative action on behalf of DSS would require the Court to apply Qatari corporate law to the details of the parties' dispute, which the Court is ill-equipped to do on the material currently before it.

The Court first addresses the parties' arguments regarding the Settlement Agreement, followed by those arising from the Consultancy Services Agreement.

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-CV-01837-RGK-ADSx | Date | April 14, 2020 |
|---|---|---|---|
| Title | *Tarek A. Fouad v. The State of Qatar, et al.* | | |

### A. Settlement Agreement

Defendants argue that the Court should dismiss Fouad's claim for *forum non conveniens* based on the forum selection clause in the Settlement Agreement, to which DSS is a party. Plaintiff counters that the forum selection clause in the Settlement Agreement is a sham and therefore unenforceable. (*See* Pl.'s Opp. to Defs' Mot. to Dismiss ("Opp.") at 16:15-18, ECF No. 45-1.) The Court agrees with the Defendants.

Federal law applies to interpret a forum selection clause. *See Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 512 (9th Cir. 1988). In general, the Court will consider both private and public interests when evaluating a *forum non conveniens* motion. *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 (2013). When the parties' contract contains a valid forum selection clause, however, only public interests are considered. *Id.* at 62–63. Accordingly, the Court must first decide the validity of the forum selection clause and then look to the public interest factors. "Under the Supreme Court's standard for resolving motions to dismiss based on a forum selection clause, the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis." *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). When resolving a forum selection clause, a court may "consider facts outside of the pleadings." *Id.*

#### 1. *Validity*

"The appropriate way to enforce a forum selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co.*, 571 U.S. at 60. Forum selection clauses are considered prima facie valid. *See Carnival Cruise Lines v. Shute*, 499 U.S. 585, 589 (1991); *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). There are three reasons a forum selection clause may be unenforceable: (1) "if the inclusion of the clause in the agreement was the product of fraud or overreaching"; (2) the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived of its day in court"; and (3) "if enforcement would contravene a strong public policy of the forum in which suit is brought." *Bremen*, 407 U.S. at 12–13; *Argueta*, 87 F.3d at 325. The party claiming that the clause is invalid or unenforceable due to unfairness bears a heavy burden of proof. *See Carnival Cruise Lines*, 499 U.S. at 592.

##### i. *Fraud or Overreaching*

First, Fouad argues that the forum selection clause is unenforceable because the Settlement Agreement was a product of fraud and overreaching. However, Fouad does not argue that the inclusion of the forum selection clause itself was a product of the fraud. Rather, Fouad argues that the other two shareholders of DSS were coerced into signing the entirety of the Settlement Agreement by the Qatar Defendants. The Supreme Court has stated that only those allegations which show "the inclusion of [the forum-selection clause] in the contract was a product of fraud or coercion" are unenforceable. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("[T]he statutory language [of the United States Arbitration Act] does not permit the federal court to consider claims of fraud in the inducement of the contract generally."); *Richards v. Lloyd's of London*, 135 F.2d 1289, 1297 (9th Cir. 1998) (finding allegations of fraud to the contract as a whole insufficient to invalidate the forum selection clause). Therefore, without any

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-CV-01837-RGK-ADSx | Date | April 14, 2020 |
|---|---|---|---|
| Title | ***Tarek A. Fouad v. The State of Qatar, et al.*** | | |

differentiation between the alleged fraud that induced DSS to enter the Settlement Agreement and the separate proof of fraud concerning the inclusion of the forum selection clause, Fouad has not met his burden to show the fraud exception applies. *See TAP Holdings LLC v. PNC Bank*, No. CV 08-6310 PA (JTLX), 2008 WL 113390605, at *3 (C.D. Cal. Nov. 24, 2008).

   ii.  *Deprived of His Day in Court*

 Second, Plaintiff alleges in his Complaint that he cannot receive due process in a Qatari court where bribes paid for the benefit of the Emir's brother are a subject of the suit. (FAC ¶ 4, ECF No. 36.) The Court finds that Plaintiff has not made a sufficient showing to substantiate this claim.

 "[I]t should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Bremen*, 407 U.S. at 18. Courts have found that a "forum selection clause should not be enforced if all the relevant witnesses are not located in that forum, the party is physically unable to go to the chosen forum, or the party lacks the financial ability to bear the costs of proceeding in the chosen forum." *White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*, 407 F. Supp. 3d 931, 947–48 (S.D. Cal. 2019); *See Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 869 (9th Cir. 1991); *Goldman v. U.S. Transp. & Logistics, LLC*, No. CV 17-00691-BAS-NLS, 2017 WL 6541250, at *5 (S.D. Cal. Dec. 20, 2017).

 Here, Fouad alleges that the Federal Bureau of Investigation advised him in 2018 not to travel to Qatar because of a threat to his safety. (FAC ¶ 4, ECF No. 36.) However, Fouad offers no specific evidence to support this claim. *See Spradlin*, 926 F.2d at 868 (forum selection clause enforced where appellant "failed to produce evidence of inconvenience he would suffer by litigating in Saudi Arabia"); *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir.1984) ("Absent some evidence submitted by the party opposing enforcement of the clause to establish…such serious inconvenience in litigating in the selected forum so as to deprive that party of a meaningful day in court, the provision should be respected as the expressed intent of the parties.") (citing *Bremen*, 407 U.S. at 12–19)).

 The Ninth Circuit in *Argueta v. Banco Mexicano* rejected a plaintiff's assertions that Mexico was an unreasonable alternate forum in which to litigate under circumstances that are instructive in this case. 87 F.3d 320 at 327. In *Argueta*, the plaintiff provided evidence that he was imprisoned through the influence of Banco Mexico and was subsequently released with his charges dropped only after agreeing to the modification of a loan agreement. *See id.* at 326. Despite finding that Banco Mexico "may have abused the complaint procedure to intimidate [the plaintiff]" into signing, the court held that this did not show that the plaintiff was unable to travel back to Mexico because "the *possibility* that the bank *may* file new charges against [the plaintiff] [wa]s mere speculation." *See id.* (emphasis in original). Further, the court found that the plaintiff did not show that his physical presence in Mexico was required to pursue the action, and although the plaintiff had "difficulty retaining an attorney in Mexico," he "d[id] not show that he [could not] retain any counsel in Mexico." *See id.* at 327.

 Here, Fouad presents less evidence of a threat to his personal safety. He asserts that the government could interfere with the judiciary in an action involving the brother of the Emir (FAC, ¶ 4,

Case 8:19-cv-01837-RGK-ADS   Document 62   Filed 04/14/20   Page 8 of 12   Page ID #:1888

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-CV-01837-RGK-ADSx | Date | April 14, 2020 |
|---|---|---|---|
| Title | *Tarek A. Fouad v. The State of Qatar, et al.* | | |

ECF No. 36), but this is likewise speculation. Next, he states that an FBI agent warned him not to travel to Qatar (*Id.*), but does not provide either amplifying details or any admissible evidence to substantiate this claim. *See Argueta,* 87 F.3d at 326–27 (finding plaintiff's affidavit stating that a friend warned him it would not be safe for plaintiff to travel to Mexico was "inadmissible hearsay and also [did] not support a finding that [plaintiff] would be in danger if he were to return to Mexico."). Lastly, Fouad has presented no evidence that his physical presence in Qatar would be required to pursue the action or that he could not retain counsel in Qatar.

Fouad also claims he cannot get a fair trial in Qatar due to corruption in Qatar's court system. The Ninth Circuit has held that, "[to] demonstrate that a foreign nation is an inadequate forum due to corruption, a party must make a powerful showing that includes specific evidence." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1226 (9th Cir. 2011). This is because "one of the central ends of the *forum non conveniens* doctrine is to avert 'unnecessary indictments by our judges condemning the sufficiency of the courts and legal methods of other nations.'" *Id.* (emphasis in original) (quoting *Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine,* 158 F.Supp.2d 377, 385 (S.D.N.Y. 2001).

For support, Fouad points to a two-page U.N. Human Rights article (the "Article"), whereby the U.N. Special Rapporteur on the Independence of Judges notes that—despite a generally independent judicial branch—interference by the Qatari government in cases involving "high-level persons" remains a matter of concern. (*Id.*; FAC, Ex. 2, ECF No. 36-2.) The article further states that "[v]iolations of due process and fair trial guarantees in [Qatar], and the consequences that such violations often have on individuals' lives…were troubling." (*Id.*)

The Article Fouad presents is specific evidence and the Court recognizes the gravity of the due process concerns in question. However, the Article as a whole does not offer strong support for Foaud's claim that he cannot receive a fair trial. First, it states that "The Special Rapporteur praised Qatar's achievements since the adoption of the Law on the Judiciary in 2003 and its current Constitution in 2004." The article then quotes her as stating that "The legal framework in Qatar is soundly grounded in the principle of separation of powers and the independence of the judiciary, both recognized in the Constitution[.]" *Id.* Furthermore, the Article's concerns are directed primarily toward marginalized groups, including "people in vulnerable situations, including women, migrants and domestic workers[.]" *Id.* Fouad falls into none of these groups.

Finally, although the article states that "the executive's interference in the judiciary, particularly in cases involving high-level persons or businesses, is still a matter of concern," the FAC's allegations regarding payments by Raytheon to the brother of Qatar's Emir seem at best tangential to the subject matter of this dispute. The substance of Fouad's claims involves a purported disagreement between DSS and the QAF over payments on a consultancy contract, with which there is little indication the Emir's brother had any direct involvement. The Court is not convinced, therefore, that concerns regarding the involvement of "high level persons" are implicated in this dispute to the extent that Plaintiff argues.

In summary, the article does not represent the kind of "powerful showing" that would permit this court to declare Qatar an inadequate forum. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163,

Case 8:19-cv-01837-RGK-ADS   Document 62   Filed 04/14/20   Page 9 of 12   Page ID #:1889

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-CV-01837-RGK-ADSx | Date | April 14, 2020 |
|---|---|---|---|
| Title | *Tarek A. Fouad v. The State of Qatar, et al.* | | |

1179 (9th Cir. 2006) (finding the Philippines an adequate forum where allegations of inadequacy were based on plaintiff's personal testimony reports that referenced "corruption, judicial bias and inefficiency…[but] [f]ocused on human rights in the Philippines…"); *c.f. McDonnell Douglas Corp. v. Islamic Republic of Iran*, 758 F.2d 341, 345-46 (8th Cir. 1985) (finding Iranian attorney's affidavit sufficient to show that plaintiff could not receive a fair day in court in Iran based on his "experience in Iran, several articles…and [a] report submitted to the Iran-United States claims Tribunal," presented along with evidence of escalating tensions between Iran and the United States and the presence of war in Iran).

Based on the foregoing, Fouad's unsubstantiated claim of a threat to his safety and single U.N. Article are both too general and too little supported for this Court to declare that Plaintiff will be effectively deprived of his day in court in Qatar. *See Carijano*, 643 F.3d at 1226 (declining to state Peru is incapable of providing redress because affidavit was too "generalized" to "pass value judgments on the adequacy of Peru's judicial system."); *Tuazon*, 433 F.3d 1163, 1179 (finding State Department Country Reports that "reference corruption, judicial bias and inefficiency" to be a "general indictment [that] provides insufficient substance to condemn the adequacy of Philippine courts…").[2]

### iii. *Contravene a Strong Public Policy*

Third, Fouad has not argued that dismissal would be contrary to any strong California or federal public policy. In fact, Defendants argue, and the Court agrees, that there is a strong federal policy in favor of enforcing forum selection clauses. *See Atl. Marine*, 571 U.S. at 60 ("[A] forum-selection clause [should be] given controlling weight in all but the most exceptional cases.") (internal citation omitted); *Richards*, 135 F.3d at 1293–94. Therefore, enforcement of the forum selection clause would not contravene public policy.

The Court accordingly finds Plaintiff has not met his burden to establish any of the three grounds which would invalidate the forum selection clause.

### 2. *Public Interest Factors*

Because the Court finds the forum selection clause valid, the Court will look to the public interest factors related to the interests of the forum over the case. These factors include: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1232 (9th Cir. 2011) (internal quotation and citation omitted).

Judicial considerations do not favor a California forum because Qatari law will govern the fraud claims. As a threshold issue, Defendants' contention that Plaintiff has no right under Qatari law to bring

---

[2] The Court notes that in *Tuazon*, the defendant had also submitted expert evidence which tended to negate the plaintiff's contention that the Philippine courts were inadequate. *See* 433 F.3d 1163, 1179. The Court finds this does not change the analysis of the present case, since Plaintiff provided less evidence to support his claim of an inadequate forum.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-CV-01837-RGK-ADSx | Date | April 14, 2020 |
|---|---|---|---|
| Title | *Tarek A. Fouad v. The State of Qatar, et al.* | | |

a shareholder derivative action involves complex issues of Qatari corporate law that this Court is not well-placed to decide. Although Fouad is a resident of California, all defendants are located in Qatar, along with almost all of the evidence and potential witnesses. Further, the fraud claims involve a Settlement Agreement entered into in Qatar, and Plaintiff's underlying claims involve a Consultancy Services agreement, under which most services took place in Qatari facilities with QAF members. Lastly, Qatar has a significant interest in determining the scope of its own sovereign immunity. Given the strong interests weighing in favor of the forum of Qatar, the Court finds that a court in that country is much better suited to hear this dispute.

**B.    Consultancy Services Agreement**

Furthermore, even if the Court found the Settlement Agreement unenforceable—as Plaintiff urges—the appropriate forum for this dispute under the Consultancy Services Agreement would be arbitration in London. (FAC, Ex. A, Art. 56.1, ECF No. 36-1.) Plaintiff makes a many-faceted argument that despite the seemingly clear language of the arbitration clause, the parties in fact agreed to arbitrate in California because Qatar is a signatory to the U.N. Convention on Arbitration, and this Court is therefore required to compel arbitration in this district. The Court disagrees for several reasons.

First, Plaintiff seems to assert that because signatories to the U.N. Convention consent to the jurisdiction of its member states for purposes of giving effect to certain arbitration awards and arbitration agreements, they also consent to arbitrate in any signatory jurisdiction. As Plaintiff puts it: "Here, the parties have agreed to arbitration 'in London, or any other venue the parties may agree on,' . . . . and being bound by the U.N. Convention, [this] includes venues in all member states, and therefore the United States." (*Id*. 9:8-10.) Specifically, Plaintiff asserts that "FAA §§ 4, 206 and 208 operate together to compel arbitration . . . since by becoming a member of the Convention, Qatar had already agreed to arbitration in the U.S., which this Court must enforce." (Pl.'s Reply ISO Mot. to Compel Arbitration ("Reply") 6:18-22.)

Section 206, however, specifies that a Court is to direct the parties to arbitrate *in accordance with the terms of their agreement*. FAA § 206 ("A party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.") Section 208 states that the provisions of Chapter 1 of the FAA apply to proceedings brought under U.N. Convention as codified in Chapter 2—such as this one—only insofar as they do not conflict with the provisions the of Chapter 2. *See* 9 U.S.C. § 208. Therefore, any provision of Section 4 that conflicts with section 206 by directing arbitration in this district is inapplicable. *See Jain v. de Mere*, 51 F.3d 686, 690 (7th Cir. 1995) ("If the agreement calls for arbitration outside of the district in which the action is brought, the limits of § 4 directly conflict with the district court's powers under § 206, and § 208 would render § 4 inapplicable.")

The language of the arbitration clause at issue clearly reflects the signatories' intent to submit to arbitration under the ICC Rules in London, England. Although the signatories may have given themselves the ability to consent to jurisdiction elsewhere, there is no indication here that they have done so. When enforcing an agreement to arbitrate, courts must "give effect to the contractual rights and expectations of the parties," and "as with any other contract, the parties' intentions control." *Stolt-*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-CV-01837-RGK-ADSx | Date | April 14, 2020 |
|---|---|---|---|
| Title | *Tarek A. Fouad v. The State of Qatar, et al.* | | |

*Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681–82 (2010).

    The Court further notes that portions of Plaintiff's argument regarding his right to compel arbitration in the United States seem to be based on a misinterpretation of the term "Court" as that term is used in the ICC Rules. Plaintiff repeatedly construes that term to imply that the ICC rules impose substantive requirements on this Court. They do not. For example, Plaintiff cites the ICC Rules for the proposition that: "Since no 'arbitral tribunal ha[d] been constituted at the time of [Plaintiff's] withdrawal' of the claims . . . Article 38, §6 of the ICC Rules provides that Plaintiff may request that 'the Court proceed with the constitution of the arbitral tribunal in accordance with the Rules so that the arbitral tribunal may make decisions as to costs.'" (Opp. 9:3-7.) However, Article 1, Section 1 of the ICC rules unambiguously defines "Court" as used therein to refer to the International Chamber of Commerce. As such, the text of those rules cannot be applied impose requirements on a district court in the Central District of California.

    Plaintiff next argues that 9 U.S.C. § 5 allows this Court to appoint a single arbitrator in California. Section 5 of the FAA provides that if an agreement contains provisions for the appointment of an arbitrator, "such method shall be followed[,]" and only if a party "fail[s] to avail himself of such method" or if there is a "lapse in the naming of an arbitrator" shall the Court appoint a single arbitrator, unless otherwise called for in the agreement. 9 U.S.C. § 5.

    Here, on August 1, 2018, QAF appointed an arbitrator as called for by the Consultancy Services Agreement. (*See* Correspondence to ICC, Ex. 14, ECF No. 39-16.) Fouad asserts, however, that there has been a "lapse" because QAF did not file an answer to either of his requests and did not pay half of the advance fees for arbitration. However, the ICC Rules specifically allow arbitration to proceed in the absence of an answer by one of the parties. *See* ICC Rules, Article 6 § 3 ("If any party against which a claim has been made does not submit an Answer…the arbitration shall proceed…"). Furthermore, while it is undisputed that QAF did not pay half of the advance fees, such action does not constitute a "lapse in the naming of an arbitrator." *See Terra Fin897., LLC v. Acrow Corp. of Am.*, No. CV 16-0075 (SRC), 2017 WL 499673, at *5 (D.N.J. Feb. 7, 2017) (rejecting Plaintiffs' argument that inability to pay ICC advance fees is a "lapse" because "aside from the reasons set forth explicitly by Section 5, [c]ourts have generally held that a 'lapse' in the naming of an arbitrator occurs (1) when a chosen arbitral forum is either unwilling or unable to arbitrate a dispute, or (2) when a 'mechanical breakdown in the arbitrator selection process' occurs.") Here, the chosen forum is willing to arbitrate the dispute, and there has been no mechanical breakdown in the process.

    Finally, Plaintiff cites to a number of cases as supporting his position. None do. Typically, they stand for the unremarkable proposition that district courts in the United States have jurisdiction under certain circumstances to enforce foreign arbitral awards and agreements to arbitrate. *See Star-Kist Foods, Inc. v. Diakan Hope, S.A.*, 423 F. Supp. 1220, 1223 (C.D. Cal. 1976) (compelling arbitration in London in accordance with arbitration agreement); *Stati v. Republic of Kazakhstan*, 199 F.Supp.3d 179, 189 (D.D.C. 2016) (staying case pending Swedish court award).

    Plaintiff cites heavily to *Chloe Z Fishing Co., Inc. v. Odyssey Re (London) Ltd.* in support of his argument that this Court may compel arbitration in California despite the text of the Consultancy

JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-CV-01837-RGK-ADSx | Date | April 14, 2020 |
|---|---|---|---|
| Title | *Tarek A. Fouad v. The State of Qatar, et al.* | | |

Services Agreement. 109 F. Supp. 2d 1236, 1261 (S.D. Cal. 2000). *Chloe Z* did not order any such relief. The defendants in *Chloe Z* moved to compel arbitration according to the parties' arbitration clause, which called for arbitration in London. Therefore, the Court compelled arbitration in London "in accordance with the provisions of the parties' agreement." *Id.* There is nothing in *Chloe Z* that can be extended to support Plaintiff's position that this Court is required to compel arbitration and appoint an arbitrator in California.

In summary, the Court finds that it is not the proper forum for this dispute. This case would be more appropriately tried in Qatar in accordance with the terms of the Settlement Agreement, or, in the alternative, arbitrated in London under the terms of the Consultancy Services Agreement. The Court therefore dismisses Plaintiff's FAC.

## V.    CONCLUSION

For the foregoing reasons, the Court orders as follows:

Plaintiffs' Motion to Stay Case and Compel Arbitration (ECF No. 48) is **DENIED**.

The Qatar Defendants' Motion to Dismiss (ECF No. 39) is **GRANTED**.

DSS' Motion to Dismiss (ECF No. 40) is **DENIED as MOOT**.

**IT IS SO ORDERED.**

                                                                                          :
                                            Initials of Preparer          _____